E-FILED
Tuesday, 03 September, 2013  04:44:51 PM
Clerk, U.S. District Court, ILCD

IN THE UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF ILLINOIS
PEORIA DIVISION

| | |
|---|---|
| DANA CRAIG, ROY FREEMAN, MARY ALICE FREEMAN, TERI-LYN CALHOUN, and GEORGE CALHOUN, individually on behalf of themselves and all other persons similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>OSF HEALTHCARE SYSTEM, an Illinois Not-For-Profit Corporation,<br><br>Defendant. | Case No. 13-cv-01285<br><br>Judge: Sara Darrow |

## ANSWER TO COMPLAINT AND AFFIRMATIVE DEFENSES

NOW COMES Defendant, OSF HEALTHCARE SYSTEM ("OSF"), by and through its attorneys, HINSHAW & CULBERTSON LLP, and for its Answer to Plaintiffs' Complaint, states as follows:

## JURISDICTION AND VENUE

1.      This Court has subject matter jurisdiction pursuant to 28 U.S.C. §1331 as the Plaintiffs' claims alleged herein arise under the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101, *et seq.*, and the Rehabilitation Act of 1973 ("Rehabilitation Act"), 29 U.S.C. § 794, *et seq.* Declaratory relief is authorized by 28 U.S.C. §§ 2201(a) and 2202 and Rule 57 of the Federal Rules of Civil Procedure, Injunctive relief is authorized by Rule 65 of the Federal Rules of Civil Procedure.

**ANSWER:**   Defendant admits that Plaintiffs bring their claims under the ADA and the Rehabilitation Act, and that they seek injunctive relief on behalf of themselves and a purported class.  OSF denies that it has any liability to Plaintiffs under the ADA or the Rehabilitation Act, and it denies that injunctive relief would be appropriate.

2.        Venue is proper in this district pursuant to 28 U.S.C. § 1391(b).  Defendant resides in this district and a substantial part of the events or omissions giving rise to Plaintiffs' claims occurred in this district.

**ANSWER:**     OSF admits the allegations of Paragraph 2.

### THE PARTIES

3.        Plaintiff Dana Craig is a 45 year old female who has been deaf since birth and is a person with a disability within the meaning of all applicable statutes.  Dana Craig resides in Chenoa, McLean County, Illinois.

**ANSWER:**     OSF lacks knowledge or information sufficient to form a belief about the truth of the allegations contained in Paragraph 3.

4.        Plaintiff Roy Freeman is a 47 year old male with a traumatic brain injury, severe hearing loss, and who utilizes a wheelchair to ambulate.  Roy Freeman is a person with a disability within the meaning of all applicable statutes and resides in Pontiac, Livingston County, Illinois.

**ANSWER:**     OSF lacks knowledge or information sufficient to form a belief about the truth of the allegations contained in Paragraph 4.

5.        Plaintiff Mary Alice Freeman is a 77 year old female who is deaf, and who uses a walker to ambulate.  Mary Alice Freeman is a person with a disability within the meaning of all applicable statutes and resides in Pontiac, Livingston County, Illinois.

**ANSWER:**     OSF lacks knowledge or information sufficient to form a belief about the truth of the allegations contained in Paragraph 5.

6.        Plaintiff Tre-Lyn Calhoun is a 54 year old female who is deaf, and is a person with a disability within the meaning of all applicable statutes.  Teri-Lyn Calhoun resides in Chillicothe, Peoria County, Illinois.

2

**ANSWER:**    OSF lacks knowledge or information sufficient to form a belief about the truth of the allegations contained in Paragraph 6.

7.      Plaintiff George (a/k/a Kent) Calhoun is a 60 year old male who is deaf and is a person with a disability within the meaning of all applicable statutes.  George Calhoun is the husband of Plaintiff Teri-Lyn Calhoun and resides in Chillicothe, Peoria County, Illinois.

**ANSWER:**    OSF lacks knowledge or information sufficient to form a belief about the truth of the allegations contained in Paragraph 7.

8.      Defendant OSF, an Illinois Not-For-Profit Corporation, also doing business as "OSF Healthcare", is based in Peoria, Illinois.  OSF is owned and operated by The Sisters of The Third Order of St. Francis, Peoria, Illinois, and consists of eight acute care facilities and two colleges of nursing.  OSF also has a primary care physician network consisting of over 600 primary care physicians, specialist physicians, and advanced practice providers.  OSF is a multi-state corporation, operating facilities in Illinois and Michigan, and provides state-of-the-art healthcare services to more than 2.5 million people in the communities it serves.

**ANSWER:**    OSF admits that it is an Illinois not-for-profit corporation with its headquarters in Peoria, Illinois. OSF admits that it has operations in Michigan and Illinois. OSF further admits that it operates hospitals and acute care facilities and sponsors a physician care network.  OSF admits that it is sponsored by The Sisters of the Third Order of St. Francis.  OSF denies all other allegations of Paragraph 8 inconsistent with the foregoing.

## CLASS ALLEGATIONS

9.      Pursuant To Fed. R. Civ. P. 23(a), Plaintiffs bring this action on their own behalf and on behalf of all other persons similarly situated.  The class that Plaintiffs seek to represent is composed of all disabled persons (i) who are deaf or hearing impaired and who depend on the sue of auxiliary aids, sign language interpreters, or other means to communicate; and (ii) with ambulatory impairments who depend upon the sue of wheelchairs or other mobility devices, and who are denied, on the basis of their disability, the full and equal enjoyment of facilities,

3

equipment and health care services offered by Defendant due to its failure to comply with the ADA and the Rehabilitation Act.

**ANSWER:**   OSF admits that the Plaintiffs intend to bring this action pursuant to Federal Rule of Civil Procedure 23(a), but OSF denies that Plaintiffs can satisfy the requirements of Rule 23.  OSF further denies that any plaintiff has been denied the full and equal enjoyment of any facilities, equipment or health care services provided or maintained by OSF  OSF further denies that it has failed to comply with any provision of the ADA or the Rehabilitation Act.

10.    The persons in the class are so numerous that joinder of all persons is impracticable and the disposition of their claims in a class action is a benefit to the parties and the Court.  Plaintiffs are informed and believe the thousands of disabled individuals seeking health care services from Defendant have suffered and will continue to suffer systemic discrimination.

**ANSWER:**    OSF denies the allegations of Paragraph 10.

11.    There are common questions of law and fact involved that affect the parties to be represented in that they are all being denied, or will be denied their civil rights of full and equal enjoyment Defendant's facilities, equipment, and health care services due to the barriers described herein.

**ANSWER:**    OSF denies the allegations of Paragraph 11.

12.    The claims of Plaintiffs are typical of the claims of the class because Plaintiffs are similarly affected by Defendant's failure to provide the legally required access to its facilities, equipment and health care services.

**ANSWER:**    OSF denies the allegations of Paragraph 12.

13.    Plaintiffs are adequate class representatives because each of them has been directly impacted by Defendant's failure to provide, on the basis of disability, the full and equal

80594322v1 0946492

enjoyment of facilities, equipment and health care services operated by or provided by OSF.  The interests of Plaintiffs are not antagonistic to or otherwise in conflict with the interests of the class as a whole.  The attorneys representing the class are experienced in representing clients in class action and class action civil rights claims.

**ANSWER:**   OSF admits that the attorneys representing the Plaintiffs have filed discrimination claims, alleging violations of the ADA, against other entities and employers. OSF denies the remaining allegations of Paragraph 13.

14.     Class certification is appropriate under Fed. R. Civ. P. 23(b)(2) because Defendant has acted and/or failed to act on grounds applicable to the class as a whole, making final declaratory and injunctive relief for the class as a whole superior to all other methods of disposition.

**ANSWER:**   OSF denies the allegations of Paragraph 14.

15.     Class certification is appropriate under Fed. R. Civ. P. 23(b)(3) because questions of law and fact common to class members predominate over other available methods for the fair and efficient adjudication of this litigation.  Common questions of fact and law include, but are not limited to the following:

> a.     Whether Defendant's failure to remove architectural barriers that are structural in nature, where such removal is readily achievable, deprives individuals with disabilities of full and equal enjoyment of Defendant's health care services; and where Defendant can show that such removal is not readily achievable whether alternative methods of barrier removal are available and readily achievable;

> b.     Whether Defendant has taken such steps as may be necessary to ensure that Plaintiffs and the class members are not excluded, denied services or otherwise treated differently than other individuals because of the absence of auxiliary aids, sing language interpreters, or other means to effectively communicate, where the taking of such steps would not fundamentally alter the nature of its offered services or would not result in an undue burden;

5

c.      Whether Defendant's failure to provide medical and diagnostic equipment that is accessible to individuals with disabilities excludes, denies or otherwise causes such individuals to be treated differently, and as a result deprives individuals with disabilities of full and equal enjoyment of Defendant's health care services, unless provision of such medical and diagnostic equipment is a fundamental alteration or undue burden;

d.      Whether Defendant's failure to make reasonable modifications to its policies, practices and procedures for making appointments, admitting patients for care, interviewing patients, conducting medical examinations, conducting diagnostic procedures, weighing patients, and generally providing healthcare services, deprives individuals with disabilities of full and equal enjoyment of such goods and services, unless making such modifications would fundamentally alter the nature of the goods and services provided;

e.      Whether Defendant has made alterations to existing facilities but has failed to make alterations in such a manner that, to the maximum extent feasible, the altered portions of the facility are readily accessible to and usable by individuals with disabilities;

f.      Whether Defendant has imposed or applied eligibility criteria that screen out or tend to screen out individuals with disabilities unless such criteria can be shown to be necessary  in the provision of goods and services; and

g.      Whether Defendant has otherwise discriminated against Plaintiffs and the class members on the basis of disabilities.

**ANSWER:**   OSF denies that class certification is appropriate, and denies each of the allegations of failures on the part of OSF and all allegations of discrimination contained in Paragraph 15, including all of its subparts.

16.      Upon information and belief, the interest of members of the class in individually controlling the prosecution of a separate action is low, in that most class members would be unable to individually prosecute an action because the amounts at stake for individuals, while significant, are relatively small for most or all of the class members contrasted with the costs of prosecution.  Concentrating litigation in a single forum will promote judicial efficiency by resolving common questions of law and fact in a single forum instead of across multiple courts.

**ANSWER:**   OSF denies the allegations of Paragraph 16.

6

17.     A class action would be manageable.  Individualized litigation presents a potential for inconsistent or contradictory judgments.  By contracts, the class action device presents far fewer management difficulties, allows the hearing of claims that might otherwise go unaddressed because of the relative expense of bringing individual lawsuits, and provides the benefits of single adjudication, economies of scale, and comprehensive supervision by a single court. References to Plaintiffs shall be deemed to include the named Plaintiffs and each member of the class unless otherwise indicated.

**ANSWER:**    OSF denies the allegations of Paragraph 17.

## DEFENDANT'S CONDUCT

18.     Full and equal access to medical care and treatment is critical for persons with disabilities.  In an October 2011 published study in the Disability and Health Journal comparing health disparities between persons in the U.S. with no disabilities and those with cognitive limitations and physical disabilities, it was revealed that individuals with physical disabilities or cognitive limitations had higher prevalence rates for 7 chronic diseases than those with no disability when adjusted for age.  Compared to adults without disability, those with physical disabilities and those with cognitive limitations experienced more cardiac disease, diabetes, stroke, arthritis and asthma, as well as higher blood pressure and cholesterol levels.  The study also noted that persons with disabilities are far less likely to receive preventive screenings. A main reason for the lack of access to preventative screenings can be attributed to the pervasive existence of access barriers – i.e., architectural, programmatic, communication and other barriers, to include the lack of (disability-specific) cultural competence among healthcare providers.

80594322v1 0946492

**ANSWER:** OSF makes no response to the reference to the published study contained in *Disability and Health Journal,* as that article contains no facts relating to OSF, and the article speaks for itself. To the extent the Plaintiffs claim the aforementioned article is indicative of any access barriers at any existing OSF facilities, OSF denies the allegations.

19. Despite its renowned excellence, OSF fails to provide persons with disabilities, whether they are in-patients or out-patients, the same quality of care as other patients, because of their disabilities. This unequal treatment occurs because, among other things, architectural barriers exist throughout OSF; clinicians and support staff are not provided the proper training and support on interacting with and caring for persons with disabilities; adaptable, accessible equipment is not available; patients using wheelchairs are often examined while seated in their chairs, when good practice would require them to be examined on a table, transfers of patients with disabilities are frequently risky and conducted without consideration of the individual's needs; diagnostic procedures such as MRI's, x-rays, ultrasounds and bone density scans are often done only after a patient is transferred with great difficulty and risk by unqualified individuals; and, while hospitalized, patients are not guaranteed accommodations such as accessible inpatient rooms, beds, personal care services and assistive equipment.

**ANSWER:** OSF denies the allegations of Paragraph 19.

20. Additionally, OSF has failed to provide adequate and appropriate auxiliary aids, sign language interpreters, or other effective means to communicate with patients who are deaf or have hearing disabilities, including: failure to provide individuals with disabilities with TTY phone devices while in hospital or examining rooms; failure to activate closed captioned telephones; failure to provide effective methods of communication between individuals who are deaf or hearing impaired with their nurses or treating physicians; failure to provide in-room call buttons or menu services accessible to persons who are deaf or hearing impaired; and reliance on

8

family members to facilitate communications between physicians and nurses and patients who are deaf or hearing impaired.

   **ANSWER:**   OSF denies the allegations of Paragraph 20.

   21.      Because of the lack of attention to their needs, Plaintiffs report that they are afraid for their personal safety and feel frustrated, humiliated or angry on many occasions during their visits to OSF.

   **ANSWER:**   OSF denies any alleged lack of attention to Plaintiffs' needs. OSF lacks knowledge or information sufficient to form a belief about the truth of the remaining allegations contained in Paragraph 21.

   22.      Defendant's denial of full and equal access to Plaintiffs manifests itself in at least the following fundamental ways: (1) pervasive architectural barriers at OSF facilities; (2) a lack of accessible medical and diagnostic equipment at OSF facilities; (3) failure to provide adequate auxiliary aids, sign language interpreters, or other means to effectively communicate with patients at its facilities who are deaf or hearing impaired; and (4) an absence of comprehensive policies and procedures to accommodate Plaintiffs' disabilities.   These violations deprive Plaintiffs and members of the proposed class full and equal access to Defendant's programs, services and facilities.

   **ANSWER:**   OSF denies the allegations of Paragraph 22.

   23.      Defendant's hospital and health care facilities are characterized by multiple and pervasive barriers to access, and as a result, people with disabilities face significant difficulty securing health services, do not receive the same level of care as nondisabled patiens, and in some cases are denied health services altogether.

   **ANSWER:**   OSF denies the allegations of Paragraph 23.

9

24.     Defendant has failed to provide architecturally accessible facilities.  Plaintiffs frequently confront architectural barriers such as inaccessible elevators, waiting rooms and examination rooms, inaccessible paths of travel, inaccessible parking areas and entrances, inaccessible alternate methods of transporting patients in and out of the hospital, and other physical barriers.

**ANSWER:**    OSF denies that it has failed to provide architecturally accessible facilities or that the Plaintiffs frequently confronted any architectural or physical barriers during the course of receiving care at any OSF facility.  OSF lacks knowledge or information sufficient to form a belief about the truth of the remaining allegations contained in Paragraph 24.

25.     Defendant has failed to provide accessible medical equipment, including height adjustable examination tables that lower to allow an individual to transfer from a wheelchair, wheelchair accessible scales, and other types of diagnostic equipment that can be made accessible to a person who uses a wheelchair, including but not limited to MRI, mammogram, and x-ray machines.

**ANSWER:**    OSF denies the allegations of Paragraph 25.

26.     Defendant has failed to implement comprehensive policies, practices and procedures to make its facilities and services accessible to individuals with disabilities.

**ANSWER:**    OSF denies the allegations of Paragraph 26.

27.     Defendant has failed to provide necessary auxiliary aids and interpreter services to insure that individuals who are deaf or hearing impaired are not denied services, segregated or otherwise treated differently than other individuals.  Specifically, OSF fails to provide TTY phones, video phones, or other accessible telephone devices in patient rooms, fails to make its telephonic meal ordering services available to persons with hearing impairments, fails to provide adequate or any sign language interpreters to patients, and fails to provide other auxiliary aids to

10

individuals who are deaf or hearing impaired, the result of which is that they are denied the same level of care as nondisabled patients.

**ANSWER:**    OSF denies the allegations of Paragraph 27.

28.    OSF is a "public accommodation" within the meaning of ADA.

**ANSWER:**    OSF makes no response to the legal conclusion stated in Paragraph 28.

### EXPERIENCES OF THE NAMED PLAINTIFFS

29.    Dana Craig has been deaf since birth.  She is able to lip read only when a person gestures and also uses sign language.  Absent a sign language interpreter, she must rely on texting or handwritten notes.  She can vocalize some portions of her speech.  Ms. Craig has been using OSF St. Joseph Medical Center in Bloomington, Illinois and OSF St. James Medical Center in Pontiac, Illinois, as the hospitals for her and her family's medical care since 2002.  Ms. Craig's experiences as described hereinafter are part of a continuing and ongoing pattern of unlawful discrimination on the basis of disability.

**ANSWER:**    OSF admits that Dana Craig has utilized certain OSF facilities for her care since 2002.  OSF lacks knowledge or information sufficient to form a belief as to the truth of Ms. Craig's characterization of her alleged disabilities.  OSF denies the remaining allegations in Paragraph 29.

30.    Plaintiff Craig has encountered a number of accessibility barriers on both OSF hospitals she has visited.  These barriers include, but are not limited to, the failure of OSF to provide a sign language interpreter before, during, and after her surgery and fort the duration of her hospital stay, the failure to provide auxiliary aids in her patient room during a hospital stay, and the failure to provide a sign language interpreter or other means to effectively communicate during emergency visits.

**ANSWER:**    OSF denies the allegations of Paragraph 30.

11

31.     In March 2007, Ms. Craig visited OSF St. Joseph Medical Center for a pre-surgery evaluation.  At the time of making the appointment, Ms. Craig specifically requested that a sign language interpreter be made available to her for that appointment and during her surgery, and also requested an accessible patient room.  On the date of her surgery, OSF failed to provide a sign language interpreter, and on one at OSF could answer Ms. Craig's inquiries as to why no sign language interpreter was available.  Ms. Craig's pre-operation preparation, surgery, and post-operation treatment were all performed were all performed without a sign language interpreter available, or any other form of auxiliary aid to allow her to effectively communicate with her physicians and nurses.  The lack of ability to communicate to healthcare professional before, during, and after the surgery was extremely frightening, upsetting, and frustrating for her under the already stressful circumstances of having surgery.

**ANSWER:**   OSF admits that Ms. Craig visited OSF St. Joseph Medical Center for care in March of 2007.  OSF lacks knowledge or information sufficient to form a belief as to the truth of Ms. Craig's allegations concerning her specific requests for accommodations or of her mental state.  OSF denies the remaining allegations of Paragraph 31.

32.     When Ms. Craig was brought into her assigned patient room after the surgery, the room was not accessible.  There was no closed captioning on the television, TTY phone, or any other method for her to communicate.  Ms. Craig attempted to communicate with the nursing manager about the availability of TTY and other accessible services, however, it was very difficult to communicate or lip read as Ms. Craig had various tubes taped to her face.  It was not until a day or two after her surgery that Ms. Craig's patient room was made accessible by providing her with TTY phone and activating closed captioning on the television.  With each successive shift of nursing staff on duty, Ms. Craig encountered communication barriers as the staff was not aware that she was deaf.

80594322v1 0946492

**ANSWER:** OSF denies that Ms. Craig's room did not have a television with a close captioning viewing option. OSF admits that TTY phones are not placed in patient care rooms, but denies any obligation to do so. OSF lacks knowledge or information sufficient to form a belief about the truth of Ms. Craig's allegations concerning her perceptions concerning any alleged difficulty in communication with staff of OSF. OSF denies the remaining allegations of Paragraph 32.

33. On May 7, 2012, Ms. Craig had to visit the emergency room at OSF St. James in Pontiac, Illinois, to accompany her adult son as he had sustained a knee injury and was in severe pain. Ms. Craig requested that she be provided a sign language interpreter so that she could communicate with her son's doctor but the OSF information desk personnel did not respond. After she was able to say "hello" loudly, a nurse nearby finally assister her. While Ms. Craig's son was in triage, after learning Ms. Craig was deaf, the nurse said he would have to rely any communications to his mother, did not make any attempts to communicate with Ms. Craig, and otherwise ignored Ms. Craig because she was deaf. Ms. Craig attempted to interject certain information about her son's previous operation but was ignored by the examining doctor. Her presence or inability to effectively communicate with her son's treating physician was treated as a nuisance, and she remained quiet for the remaining of the 2-3 hour visit without ever having been provided an interpreter.

**ANSWER:** OSF admits that Ms. Craig made a telephone call to an OSF physician office on May 7, 2012, and Ms. Craig had the assistance of a voice relay operator on the line. OSF denies the remaining allegations of Paragraph 33 inconsistent with the foregoing and denies any allegations relating to any alleged failure on the part of OSF staff to communicate with her.

34. On May 10, 2012, three days after her May 7th visit with her son, Ms. Craig rushed her husband to OSF St. James emergency room as he was in intense pain. He was admitted immediately. Ms. Craig informed the staff at the desk that she was deaf and needed a sign language interpreter during the time her husband was hospitalized. While he was being treated, Ms. Craig's husband repeatedly told the hospital personnel attending to him that his wife

80594322v1 0946492

was deaf and that he had to be able to look at her in order to communicate.  Mr. Craig's requests were ignored.  When Mr. Craig was asked for a person as his emergency contact, he named his wife, Ms. Craig.  The staff stated that he would need to give a different emergency contact person because his wife was deaf.

**ANSWER:**   OSF admits that Ms. Craig's husband was treated at the OSF St. James emergency department.  OSF further admits that Ms. Craig was identified as her husband's emergency contact. OSF denies the remaining allegations of Paragraph 34.

35.     On May 10, 2012, Plaintiff Craig's husband was at OSF St. James Hospital for approximately 5 hours.  At no time while at the hospital did a sign language interpreter arrive to assist Ms. Craig in communicating with OSF physicians or personnel.  Even when the doctor came in to discuss the results of the CAT scan performed, the physician did not communicate the information to Ms. Craig while he discussed the results in her presence.  As such, Ms. Craig was not able to ask any questions due to lack of interpreter services.  It was not until the next day, *after* Mr. Craig had left the hospital, that Ms. Craig learned they found a cyst on his lung and he was strongly encouraged to follow-up with his physician.

**ANSWER:**   OSF lacks knowledge or information sufficient to form a belief about Ms. Craig's allegation as to when she learned about a cyst on her husband's lung.  OSF further lacks knowledge or information sufficient to form a belief about the truth of Ms. Craig's allegation as to how long she was at the hospital.  OSF denies the remaining allegations contained in Paragraph 35.

36.     OSF's continuing failure to provide auxiliary aids or other accessible services to allow its personnel, nurses, and physicians to effectively communicate with patients and/or their family members who are deaf or hearing impaired has created significant difficulty and frustration for Plaintiff Craig.

**ANSWER:**   OSF denies the allegations of Paragraph 36.

14

37.     Plaintiff Roy Freeman suffered a traumatic brain injury in 2004 as a result of an automobile accident and has limited mobility. Mr. Freeman is able to stand and walk short distances with the use of a walker with arm rests due to arm spasms, and with the assistance of two people, both walking in front and behind him, for balance and stability. Mr. Freeman primarily relies on the use of a manual wheelchair, but is not able to push himself and must be pushed by another person. Mr. Freeman also has severe hearing loss. Plaintiff Freeman has been a patient at OSF St. James – John W. Albrecht Medical Center in Pontiac, Illinois for his medical care and outpatient therapy since 2004. Mr. Freeman and his experiences, as described hereinafter, are part of a continuing and ongoing pattern of unlawful discrimination on the basis of disability.

**ANSWER:** OSF admits that Mr. Freeman has received periodic services as an outpatient at OSF St. James. OSF denies that it discriminated against Mr. Freeman in any manner. OSF lacks knowledge or information sufficient to form a belief about the truth of the allegations concerning Mr. Freeman's characterization of the severity of his hearing loss. OSF lacks knowledge or information sufficient to form a belief about the truth of the remaining allegations contained in Paragraph 37.

38.     At OSF St. James, Plaintiff Freeman has encountered a number of barriers, starting in the hospital's exterior parking lots. While there are designated accessible parking spots, there are a limited number of curb cut outs to allow someone in a wheelchair access to the sidewalk and enter the hospital. There are no safe paths to use to access the curb cut outs that do exist, and to access such curb cut outs in order to reach the sidewalk, a person using a wheelchair must roll behind all of the other vehicles parked in the accessible parking spots, jeopardizing his or her safety due to reduced visibility. The parking spot that is closest to the curb cut outs is the furthest parking spot from the hospital's main entrance. Although OSF has a golf cart shuttle service to transport people to and from the parking lot and hospital, the golf cart service is not available for use by Mr. Freeman because it is not wheelchair accessible.

15

**ANSWER:**   OSF admits it operates a golf cart shuttle for use in the parking lot. OSF lacks knowledge or information sufficient to form a belief about the truth of Mr. Freeman's allegations about his ability to use the cart. OSF denies the remaining allegations of Paragraph 38.

39.     Plaintiff Freeman's sister, Renia Holzhauer, is his full time caregiver.  At least 7 years ago, Ms. Holzhauer first addressed the parking lot curb issue with OSF.  After several meetings, OSF provided MR. Holzhauer with a swipe card to access the employee's entrance when entering the hospital with her brother.  However, the entrance did not have an automatic door opener and Ms. Holzhauer either struggled to open the door and push Mr. Freeman's wheelchair or waited for another person to open and hold the door.

**ANSWER:**   OSF lacks knowledge or information sufficient to form a belief about the truth of the allegations concerning Mr. Freeman's caregiver or any personal issues he experienced with regard to entering the hospital.  OSF admits that a swipe card is necessary to access the employees' entrance and that it does not have an automatic door.  Patient care entrances are equipped with automatic doors.  OSF denies any remaining allegations of Paragraph 39 inconsistent with the foregoing.

40.     Additionally, Plaintiff Freeman encounters accessibility barriers in the elevators at OSF.  In the main area of the OSF St. James Hospital, the elevators are too small to accommodate a wheelchair.  Ms. Holzhauer must push Mr. Freeman's wheelchair in sideways, which is the only way it will fit.  Then, it is an extremely tight fit for her to accompany him, let alone others.  The larger elevator in the hospital is only to be used by employees as they transport patients in their beds and is not available to other individuals using the hospital, including those in wheelchairs.

**ANSWER:**   OSF denies the allegations of Paragraph 40 as all elevators comply with Illinois Department of Public Health requirements on size.

41.     Plaintiff Freeman is never weighed during his visits to OSF or by his primary care doctor, a member of the OSF Medical Group, at his regular or annual examinations because OSF

80594322v1 0946492

does not have lift equipment available to safely transfer him from his wheelchair onto a scale and does not have wheelchair accessible weight scales.  Physicians and nursing staff consistently ask Ms. Holzhauer for his weight and accept whatever amount she provides, or uses his weight recorded from a prior visit.  These and other barriers prevent Mr. Freeman from receiving comprehensive healthcare treatment services at OSF.

**ANSWER:**   OSF denies the allegations of Paragraph 41.

*Mary Alice Freeman*

42.    Plaintiff Mary Alice Freeman uses a walker to ambulate.  She is also deaf and uses sign language to communicate.  Ms. Freeman uses OSF St. James for hospital services and her experiences, as described hereinafter, are part of a continuing and ongoing pattern of unlawful discrimination on the basis of disability.

**ANSWER:**   OSF admits that Ms. Freeman has utilized OSF St. James for professional services.  OSF denies that it is discriminated against Ms. Freeman in any manner.  OSF lacks knowledge or information sufficient to form a belief about the truth of the remaining allegations of Paragraph 42.

43.    Plaintiff Mary Alice Freeman is the mother of Plaintiff Roy Freeman, and frequently is accompanied to hospital and medical appointments by her daughter, Renia Holzhauer.  The barriers to accessibility in the parking lots and elevators at OSF described above are also applicable to Ms. Freeman because of her use of a walker.  Ms. Freeman is not able to climb the curb safely on her own, and as a result of the lack of curb cut outs allowing her to maneuver her walker onto the sidewalk, she must walk slowly through the parking lot traffic and behind cars in order to locate the closest curb cut out to permit her access to the hospital entrances, which poses a safety risk.

80594322v1 0946492

**ANSWER:**    OSF denies the existence of any accessibility barriers with respect to elevators, curb cut-outs or restricted parking spaces which prevent her from accessing OSF facilities or that the same constitute a safety risk.  OSF lacks knowledge or information sufficient to form a belief about the truth of the remaining allegations of Paragraph 43.

44.    OSF does not provide sign language interpreters during Ms. Freeman's inpatient stays or during emergency room visits, and only provides sign language interpreters when scheduled in advance for outpatient appointments.  On October 28, 2012, Ms. Freeman was taken to the OSF St. James emergency room.  Ms. Holzhauer requested a sign language interpreter for her mother, but none was provided.  Ms. Freeman was admitted to the OSF St. James Hospital through October 31, 2013, and at no point during her inpatient stay was she provided with an interpreter.  Fearful for her mother's safety, Ms. Holzhauer would try to be present at the hospital as much as her schedule would allow in order to communicate with her mother and staff.  During her entire inpatient stay, Ms. Freeman was unable to communicate with her doctors, nurses, and staff due to the failure of OSF to provide an interpreter.

**ANSWER:**    OSF denies Plaintiffs' characterization of how and when it provides interpreters to the hearing impaired. OSF admits that Ms. Freeman has presented at the OSF St. James emergency department on October 28, 2012. OSF lacks knowledge or information sufficient to form a belief about the truth of the allegations relating to Ms. Holzhauer's intentions or concerns.  OSF denies that Ms. Freeman was denied services as a result of her condition.

45.    Ms. Freeman also encountered barriers when using OSF services to order meal service and requesting assistance from nursing staff.  OSF uses a meal ordering process that requires patient to call the cafeteria to place their orders from a menu; meals are not delivered unless a patient orders them.  The meal ordering process does not make it possible for a hearing impaired person to order a meal without assistance.  Additionally, when using the call button to notify nurses that she needed assistance with meal ordering or otherwise, Ms. Freeman was unable to respond to the person on the other end of the call button because she is deaf.  There

80594322v1 0946492

was no TTY phone or other accessible phone device which would allow Ms. Freeman to communicate with nurses or the meal ordering service without assistance.

**ANSWER:**   OSF lacks knowledge or information sufficient to form a belief about the truth of the allegations relating to Ms. Freeman's characterization of her communications with food service staff.  OSF denies the remaining allegations of Paragraph 45 as they relate to the food ordering process at OSF.

### Teri-Lyn Calhoun and George Calhoun

46.     Plaintiff Teri-Lyn Calhoun is deaf and uses American Sign Language to communicate. She can lip read and can verbalize speech.  Teri-Lyn Calhoun's husband, Plaintiff George Calhoun is also deaf and communicates using American Sign Language. The Calhouns have been using OSF St. Francis Medical Center in Peoria, Illinois as their primary hospital for approximately 15-20 years, and have had numerous visits/appointments at the hospital in the past 2 years.  Their experiences, as described hereinafter, are part of a continuing and ongoing pattern of unlawful discrimination on the basis of disability.

**ANSWER:**   OSF admits that the Ms. Teri-Lyn Calhoun has utilized OSF physician offices and visited the Emergency Department of St. Francis Medical Center in Peoria for professional services in 2009. OSF admits that George Calhoun has utilized OSF physician offices and has visited the Emergency Department of St. Francis Medical Center in Peoria for professional services in 2010 and 2011 and had an observation stay in 2012.  OSF denies that it discriminated against either Mr. or Mrs. Calhoun in any manner.  OSF lacks knowledge or information sufficient to form a belief about the truth of the remaining allegations contained in Paragraph 46.

47.     The Calhouns have experienced continued difficulty communicating with doctors and nurses at OSF because OSF has failed to provide sign language interpreters, has failed to provide sign language interpreters at all in many instances, and has failed to provide other auxiliary aids to allow them to effectively communicate.

**ANSWER:**   OSF denies the allegations of Paragraph 47.

80594322v1 0946492

48.     In December 2012, George Calhoun was rushed to OSF St. Francis from work with chest pressure and discomfort.  At George's request, his work health clinic's staff attempted to contact a sign language interpreter whom George previously used for unrelated health issues, but they could not reach the interpreter and left a voicemail message.  George then asked the EMT in the ambulance to contact the same interpreter and he did.  The interpreter, having received the message from George's workplace, was already en route to the hospital.  Upon her arrival at the emergency room, Teri-Lyn had to request that a nurse call her son because OSF did not have video phones, TTY phones, or other telephone devices in the immediate area for persons who are deaf.  The nurse did not provide information as to any other areas of the hospital that would have such phones for her use.

**ANSWER:**   OSF admits that it provided professional services to Mr. George Calhoun in December of 2012.  OSF lacks knowledge or information sufficient to form a belief about the truth of the allegations concerning communications with providers prior to the arrival of her husband at the hospital.  OSF admits that there is no TTY telephone in the Emergency Department of OSF St. Francis Hospital, but denies any obligation to maintain one. OSF denies the remaining allegations contained in Paragraph 48.

49.     The aforementioned sign language interpreter arrived at the hospital and stayed with George during his stay for approximately 24 hours.  OSF refused to pay the interpreter for her services on the basis that she was on their approval list of contracted interpreters.  OSF never advised the Calhouns at the time regarding the policy, and never offered to provide a substitute interpreter during that time.  The Calhouns did not learn that the interpreter was not paid until much later.  Not all OSF-provided interpreters are fully qualified in *American* Sign Language, and the Calhouns have had a negative experience with the sign language interpreters provided to the by OSF in the past.  OSF does not allow the patients to have a choice of interpreter.

**ANSWER:**   OSF admits that interpretation services were provided to George Calhoun. OSF denies that patients are not allowed choice with respect to an interpreter.  OSF denies that it

80594322v1 0946492

failed to pay for an interpreter and further states that a patient is only responsible for payment if the patient declines the use of a hospital-provided interpreter and selects instead their own interpreter. OSF denies the remaining allegations of Paragraph 49.

50.     In April 2011, Teri-Lyn took George to the hospital's emergency room due to complications from a prostate biopsy.  Upon arrival, she requested that a sign language interpreter be provided.  Because George was in extreme discomfort, she did not want to delay his treatment by waiting for an interpreter.  Teri-Lyn is able to speak quite clearly but has very limited hearing.  Repeatedly through the visit, she had to remind the staff that she was not an interpreter and was still waiting for the  requested interpreter to arrive.  Teri-Lyn's ability to accurately interpret was hampered, because as she signed to George, she would verbally repeat what she was lip reading to ensure she was accurately conveying the information, and in several instances the physician had to correct her for relaying incorrect information based on her mistakes in reading their lips.  Moreover, Teri-Lyn's ability to tread lips is often adversely affected when under stress, as she was in that situation.  OSF never explained why they failed to provide an interpreter.

**ANSWER:**   OSF admits that Mr. Calhoun was provided professional services at OSF St. Francis in April of 2011.  OSF lacks knowledge or information sufficient to form a belief about the truth of Ms. Calhoun's allegations concerning her perceptions of what occurred during treatment of her husband, or her ability to lip read.  OSF denies the remaining allegations of Paragraph 50 inconsistent with the foregoing.

51.     In 2003, Teri-Lyn Calhoun went to the emergency room at OSF St. Francis.  She was alone and in pain.  Her ability to read lips is also adversely affected when she is in pain.  After she was admitted, she was attended to by a doctor who without any explanation, left her unattended for about 20 minutes.  She did not know what was happening and had no way to call for assistance.  Alone, in pain, and without the ability to hear or communicate, she was very frightened, frustrated, confused and distressed.

**ANSWER:**   OSF lacks knowledge or information sufficient to form a belief about the truth of the allegations of Ms. Calhoun concerning her mental state during her visit to the emergency department at OSF St. Francis.  OSF lacks knowledge or information sufficient to form a belief about the truth of the allegations that Ms. Calhoun's ability to read lips is adversely affected when she is in pain.

## COUNT I
## VIOLATIONS OF THE AMERICANS WITH DISABILITIES ACT

52.   At all times relevant, there was in full force and effect a statute known as the American with Disabilities Act, 42 U.S.C. §§ 12101-12189 (the "ADA"), and its implementing regulations 28 C.F.R. §§ 36.101-36.608, which provide in pertinet part as follows:

  a.   No individual shall be discriminated against on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages or accommodations of any place of public accommodation. 42 U.S.C. § 12182(a); 28 C.F.R. § 36.202.1

  b.   It shall be discriminatory to subject an individual or class of individuals on the basis of a disability or disabilities of such individual or class, directly or through contractual licensing, or other arrangements, to a denial of the opportunity of the individual or class to participate in or benefit from the goods, services, facilities, privileges, advantages, or accommodations of an entity. 42 U.S.C. § 12182(b)(1)(A)(i); 28 C.F.R. § 36.202(a)

  c.   It shall be discriminatory to afford an individual or class of individuals, on the basis of disability or disabilities of such individual or class, directly, or through contractual, licensing, or other arrangements, to a denial of the opportunity of the individual or class to participate in or benefit from the goods, services, facilities, privileges, advantages or accommodations of an entity. 42 U.S.C. § 12182(b)(1)(A)(ii); 28 C.F.R. § 36.202(b)

  d.   It shall be discriminatory to impose or apply eligibility criteria that screen out or tend to screen out an individual with a disability or any class of individuals with disabilities from fully and equally enjoying any goods, services, facilities, privileges, advantages, or accommodations, unless such criteria can be shown to be necessary for the provisions of the goods, services, facilities, privileges, advantages or accommodations being offered. 42 U.S.C. § 12182(b)(2)(A)(i); 28 C.F.R. § 36.301(a).

  e.   It shall be discriminatory to fail to make reasonable modifications in policies, practices, or procedures, when such modifications are necessary to afford such goods, services, facilities, privileges, advantages, or accommodations to individuals with disabilities unless the entity can demonstrate that making such

modifications would fundamentally after the nature of such goods, services, facilities, privileges, advantages, or accommodations. 42 U.S.C. § 12182(b)(2)(A)(ii); 28 C.F.R. § 36.302(a).

       f.     It shall be discriminatory to fail to remove architectural barriers that are structural in nature in existing facilities where such removal is readily achievable. 42 U.S.C. § 12182(b); 28 C.F.R. § 36.304(a).

**ANSWER:**    OSF admits that the accuracy of the quoted references to the ADA.

53.    Defendant's acts and omissions alleged herein violated and continue to violate the ADA and its implementing regulations in one or more or all of the following manners:

       a.     Defendant has discriminated against Plaintiffs and the class members by denying them the opportunity for the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of the departments and facilities owned, operated and/or contracted for use by Defendant.

       b.     Defendant has discriminated against Plaintiffs and the class members by denying them the opportunity to participate in or benefit from the goods, services, facilities, privileges, advantages, or accommodations of Defendant's facilities.

       c.     Defendant has discriminated against Plaintiffs and the class members by imposing or applying eligibility criteria that screen out or tend to screen out disabled individuals with ambulatory impairments where such criteria is not necessary for the provision of health care services.

       d.     Defendant has discriminated against Plaintiffs and the class members by failing to make reasonable modifications in policies, practices, or procedures which are necessary to afford its goods, service and facilities to Plaintiffs and the class members where such modifications would not fundamentally after the nature of its goods, services or facilities.

       e.     Defendant has discriminated against Plaintiffs and the class members by failing to make reasonable modifications in policies, practices, or procedures which are necessary to afford its goods, services and facilities to Plaintiffs and the class members where such modifications would not fundamentally alter the nature of its goods, services or facilities.

       f.     Defendant has discriminated against Plaintiffs and the class members by failing to remove architectural barriers that are structural in nature in existing facilities.

80594322v1 0946492

g.     Defendant has discriminated against Plaintiffs and the class members by failing to provide auxiliary aids, sign language interpreters, or other means to effectively communicate with individuals who are deaf or hearing impaired, where the taking of such steps would not fundamentally alter the nature of its offered services or would not result in an undue burden.

h.     Defendant has otherwise discriminated against Plaintiffs and the class members.

**ANSWER:**     OSF denies the allegations of Paragraph 53, including all of its subparts.

54.     Defendant's conduct constitutes ongoing and continuing violations of the ADA. Unless restrained from doing so, Defendant will continue to violate the ADA.  This conduct unless enjoined, will continue to inflict injuries on Plaintiffs and the members of the class for which Plaintiffs and the class will have no adequate remedy at law.  Therefore, pursuant to Section 308 of the ADA (42 U.S.C. § 12188), Plaintiffs and members of the class are entitled to injunctive relief..

**ANSWER:**     OSF denies the allegations of Paragraph 54.

55.     Plaintiffs and members of the class are entitled to reasonable attorneys' fees and costs, pursuant 42 U.S.C. §12205.

**ANSWER:**     OSF denies the allegations of Paragraph 55.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs and members of the class pray for the following relief:

a.     A preliminary injunction and a permanent injunction, prohibiting Defendant from violating the ADA, 42 U.S.C. § 12181, et seq., and compelling Defendant to comply with the ADA;

b.     A declaration that Defendant is operating in a manner which discriminates against disabled individuals who are ambulatory impaired and who depend upon the use of wheelchairs or mobility aids and individuals who have hearing impairments and who depend on the sue of auxiliary aids, sign language interpreters, video remote interpreting ("VRI"), or other means to communicate, and that Defendant fails to provide access for persons with disabilities as required by law;

80594322v1 0946492

c. An order certifying the case as a class action pursuant to Fed. R. Civ. P. 23(a) and (b)(2), and/or (b)(3), and appointing Plaintiffs as class representatives and their attorneys as class counsel;

d. An award of attorney's fees and costs; and

e. Such other relief as the Court deems just.

**ANSWER:** OSF denies that Plaintiffs are entitled to any relief.

## COUNT II
## VIOLATION OF THE REHABILITATION ACT

1. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331 and 28 U.S.C. §1343(a). Plaintiffs' claims in Count II raise under the Rehabilitation Act, 29 U.S.C. §701 *et sequitur*, Public Law 93-112, 87 Stat. 355, as amended.

**ANSWER:** OSF admits that the court has subject matter jurisdiction of this claim. OSF further admits that Plaintiffs seek relief under the Rehabilitation Act. OSF denies any liability to any of the Plaintiffs under the Rehabilitation Act.

2-8. Plaintiffs incorporate by reference paragraphs 2 to 8 of Count 1.

**ANSWER:** OSF incorporates by reference its answers to Paragraphs 2-8 of Count I as its answers to Paragraphs 2-8 of this Count II.

9. Pursuant to Fed. R. Civ. P. 23(a)., Plaintiffs bring this action on their own behalf and on behalf of all other persons similarly situated. The class Plaintiffs seeks to represent is composed of all disabled persons (i) who are deaf or hearing impaired and who depend on the use of auxiliary aids, sign language interpreters, or other means to communicate; and (ii) with ambulatory impairments who depend upon the use of wheelchairs or other mobility devices, and who have been denied the full and equal enjoyment of facilities, equipment and health care services offered by Defendant in violation of Section 504 of the Rehabilitation Act, 29 U.S.C. § 794.

80594322v1 0946492

**ANSWER:**    OSF admits that Plaintiffs seek to represent a class as articulated in the Complaint, but denies that a class is appropriate or that OSF committed any violation of the Rehabilitation Act.

10-51.    Plaintiffs incorporate by reference paragraphs 10-50 of Count I.

**ANSWER:**    OSF incorporates by reference its answers to Paragraphs 10-51 of Count I as its answers to Paragraphs 10-51 of this Count II.

52.    OSF receives federal financial assistance in the form of reimbursement from the federal Medicare and Medicaid programs and is therefore subject to the antidiscrimination provisions of the Rehabilitation Act, as herein described.

**ANSWER:**    OSF admits that it receives reimbursement from Medicare and Medicaid for certain of its professional services rendered to patients, but denies the remaining allegations of Paragraph 52.

53.    At all times relevant, there was in full force and effect a statute known as the Rehabilitation Act of 1973, 29 U.S.C. §701 *et sequitur*, and its implementing regulations, 45 C.F.R. § 84.4(a), which provide in pertinent part as follows:

    a.    "No otherwise qualified individual with a disability…shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance…"29 U.S.C. § 794(a).

    b.    An individual with a disability is "otherwise qualified" to participate in covered programs and activities if that individual "meets the essential eligibility requirements for the receipt of such services." 45 C.F.R. 84.3(l)(4).

    c.    "Program or activity" means all of the operations of an entire corporation if assistance is extended to such corporation as a whole or the corporation is principally engaged in the business of providing health care services, and any part of the corporation receives federal financial assistance. 29 U.S.C. § 794(b)(3)(A)(i) and (ii); 45 C.F.R. § 84.3(k)(3)(i)(A). and (ii).

    d.    "Federal financial assistance" means "any grant, loan, contract…or any other arrangement by which the Department [of Health and Human Services] provides or otherwise makes available assistance in the form of…[f]unds." 45 C.F.R. § 84.21.

80594322v1 0946492

e.      "No qualified handicapped person shall, because a recipient's facilities are inaccessible to or unusable by handicapped persons, be denied the benefits of, be excluded from participation in, or otherwise be subjected to discrimination under any program or activity to which this part applies."

f.      "Accessibility.  A recipient shall operate its program or activity so that when each part is viewed in its entirety, it is readily accessible to handicapped persons." 45 C.F.R. §84.21.

g.      "In providing health, welfare, or other social services or benefits, a recipient may not, on the basis of handicap: (1) Deny a qualified handicapped person these benefits or services…(3) Provide a qualified handicapped person with benefits or services that are not as effective as the benefits or services provided to others…(4) Provide benefits or services in a manner that limits or has the effect or limiting the participation of qualified handicapped persons." 45 C.F.R. § 84.52(a).

**ANSWER:**      OSF admits that the Plaintiffs have accurately cited the certain provisions of the Rehabilitation Act.  OSF denies that it violated any provision of the Rehabilitation Act.

54.      OSF's acts and omissions alleged herein violated and continue to violate the Rehabilitation Act and its implementing regulations in one or more or all of the following manners:

a.      Defendant has discriminated against Plaintiffs and the class members by denying them the opportunity for the full and equal employment of the goods, services, facilities, privileges, advantages, or accommodations of the facilities owned, operated and/or contracted for use by Defendant.

b.      Defendant has discriminated against Plaintiffs and the class members by denying them the opportunity to participate in or benefit from the goods, services, facilities, privileges, advantages, or accommodations of Defendant's facilities.

c.      Defendant has discriminated against Plaintiffs and the class members by offering or affording them services that are not equal to those services afforded to other individuals without ambulatory or hearing impairments.

d.      Defendant has discriminated against Plaintiffs and the class members by imposing or applying eligibility criteria that screen out or tend to screen out disabled individuals with ambulatory impairments who cannot independently transfer from their wheelchairs onto examination chairs where such criteria is not necessary for the provision of health care services.

27

  e. Defendant has discriminated against Plaintiffs and the class members by failing to make reasonable modifications in policies, practices or procedures, which are necessary to afford its goods, services and facilities to Plaintiffs and the class members where such modifications would not fundamentally alter the nature of its goods, services or facilities.

  f. Defendant has discriminated against Plaintiffs and the class members by failing to remove architectural barriers that are structural in nature in existing facilities where such removal is readily achievable;

  g. Defendant has discriminated against Plaintiffs and the class members by failing to provide auxiliary aids, sign language interpreters, or other means to effectively communicate with individuals who are deaf or hearing impaired, where the taking of such steps would not fundamentally alter the nature of its offered services or would not result in an undue burden; and

  h. Defendant has otherwise discriminated against Plaintiffs and the class members.

**ANSWER:** OSF denies the allegations of Paragraph 54, including all of its subparts.

55. Section 505(a)(2) of the Rehabilitation Act, 29 U.S.C. §794(a)(2), states that the "remedies, procedures and the rights set forth in title VI of the Civil Rights Act of 1964 [being 42 U.S.C. § 2000(d) *et sequitur*] shall be available" for violations of Section 504 of the Rehabilitation Act. By law, such remedies include compensatory monetary damages. *Barnes v. Gorman*, 536 U.S. 181 (2002).

**ANSWER:** OSF admits that the Plaintiffs have accurately cited the certain provisions of the Rehabilitation Act. OSF denies that it violated any provision of the Rehabilitation Act. OSF makes no response to the legal citation included in Paragraph 55.

56. Defendant's conduct has inflicted injury and damages upon Plaintiffs and the class members, including loss of a civil right, mental anguish, humiliation and mental pain and suffering.

**ANSWER:** OSF denies the allegations of Paragraph 56.

57. Plaintiffs and members of the class are entitled to reasonable attorneys' fees and costs, pursuant to Section 505(b) of the Rehabilitation Act, 29 U.S.C. § 794a.

80594322v1 0946492

**ANSWER:**     OSF denies the allegations of Paragraph 57.

WHEREFORE, Plaintiffs and members of the class pray for the following relief:

      a.     A declaration that Defendant is operating in a manner which discriminates against disabled individuals with ambulatory impairments or mobility aids and individuals who have hearing impairments and who depend on the use of auxiliary aids, sign language interpreters, video remote interpreting ("VRI"), or other means to communicate, and the Defendant fails to provide access for persons with disabilities as required by law;

      b.     An order certifying the case as a class action pursuant to Fed. R. Civ. P. 23(a) and (b)(2) and/or (b)(3), and appointment Plaintiffs as class representatives and their attorneys as class counsel;

      c.     An award of compensatory monetary damages;

      d.     An award of attorneys' fees and costs; and

      e.     Such relief as the Court deems just.

**ANSWER:**     OSF denies that Plaintiffs are entitled to any relief under Count II.

80594322v1 0946492

**AFFIRMATIVE DEFENSES**

**FIRST AFFIRMATIVE DEFENSE**
STATUTE OF LIMITATIONS

1.      Plaintiffs' claims and the claims of the putative class members are barred in whole or in part by the applicable statutes of limitation, including the statute of limitations applicable to the American's With Disabilities Act , 42 U.S.C. §§ 12101-12189 (the "ADA") and the Rehabilitation Act, 29 U.S.C. § 701 *et seq*. ("Rehabilitation Act").

**SECOND AFFIRMATIVE DEFENSE**
LACHES

2.      Plaintiffs' claims and the claims of the putative class members are barred because plaintiff, and/or putative class members, unreasonable delayed in taking action in connection with the claims alleged in the complaint, causing substantial prejudice to defendant OSF Healthcare System, and the complaint is therefore barred pursuant to the Doctrine of Laches.

**THIRD AFFIRMATIVE DEFENSE**
WAIVER

3.      Plaintiffs' claims and the claims of the putative class members are barred by the conduct, actions and inactions of plaintiffs, and/or the putative class members, which amount to constitute a waiver of any right or rights of plaintiffs and/or putative class members, may or might have in relation to matters alleged in the complaint.

**FOURTH AFFIRMATIVE DEFENSE**
ESTOPPEL

4.      By reason of the course of conduct in connection with the claims asserted in this action, plaintiffs, and/or the putative class members, are estopped from obtaining the relief sought, or any relief whatsoever as alleged in the complaint.

80594322v1 0946492

**FIFTH AFFIRMATIVE DEFENSE**
GOOD FAITH COMPLIANCE WITH REGULATORY STANDARDS

5.      OSF Healthcare System alleges that at all times it acted in good faith and in accordance with the Americans with Disabilities Act, the Rehabilitation Act and standards promulgated by the Illinois Department of Public Health, thus precluding any recovery by plaintiffs and/or the putative classes against OSF Healthcare System

**SIXTH AFFIRMATIVE DEFENSE**
IMPROPRIETY OF CLASS ACTION

6.      This action is not properly brought as a class action in that, among other things, plaintiffs are not proper class representatives, common questions of fact and law did not predominate, plaintiffs' claims are not typical of the claims in the purported class and the class action is not superior to other available methods for the fair and efficient the judication of this controversy.

**SEVENTH AFFIRMATIVE DEFENSE**
CONSENT

7.      Plaintiffs, and/or putative class members, often made multiple trips to OSF facilities and therefore consented to and acquiesced in the alleged conduct of OSH Healthcare System.

**EIGHTH AFFIRMATIVE DEFENSE**
JUSTIFICATION/EXCUSE

8.      The complaint is barred, in whole or in part, because the acts and/or omissions alleged in the complaint were justified and/or excused pursuant to compliance with regulations applicable to hospital.

80594322v1 0946492

## **NINTH AFFIRMATIVE DEFENSE**
### FAILURE TO MITIGATE DAMAGES

9.      Although OSF Healthcare System denies that plaintiffs and/or putative class members have suffered any harm as alleged in the complaint to the extent that plaintiffs and/or putative class members have suffered harm, plaintiffs and/or putative class members have failed to mitigate that harm.

Respectfully submitted,

/s/ Tom H. Luetkemeyer
Tom H. Luetkemeyer (Lead Counsel)
Daniel K. Ryan
Scott M. Gilbert
HINSHAW & CULBERTSON LLP
222 N. LaSalle Street, Suite 300
Chicago, IL 60601
Telephone: 312-704-3000
Facsimile: 312-704-3001
tluetkemeyer@hinshawlaw.com
dryan@hinshawlaw.com
sgilbert@hinshawlaw.com

L. Lee Smith
HINSHAW & CULBERTSON LLP
416 Main Street, 6th Floor
Peoria, IL 61602
Telephone: 309-674-1025
Facsimile: 309-674-9328
lsmith@hinshawlaw.com

Attorneys for Defendant,
OSF HEALTHCARE SYSTEM

80594322v1 0946492

## CERTIFICATE OF SERVICE

I hereby certify that on **September 3, 2013**, I electronically filed this **ANSWER TO COMPLAINT AND AFFIRMATIVE DEFENSES** with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to the following:

Jennifer Lundy Sender
Andres J. Gallegos
Catherine Ann Cooke
Robert McKenna Winter
ROBBINS SALOMON & PATT
180 N. LaSalle Street, Ste. 3300
Chicago, IL 60601
(*Attorneys for Plaintiffs*)


  /s/ Tom H. Luetkemeyer
Attorneys for Defendant
Tom H. Luetkemeyer
HINSHAW & CULBERTSON LLP
222 N. LaSalle Street, Suite 300
Chicago, IL 60601

80594322v1 0946492